137 N.J. Super. 13 (1975)
347 A.2d 535
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MICHAEL PALUMBO AND JOSEPH PATIRO, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1975.
Decided November 3, 1975.
*14 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Michael A. Graham, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Edgar F. Devine, Jr., Deputy Attorney General, of counsel and on the brief).
Mr. Martin F. Kronberg argued the cause for respondent Joseph Patiro (Messrs. Stein, Bliablias, Goldman & McGuire, attorneys).
PER CURIAM.
Defendant Michael Palumbo (who did not participate in this appeal) was a former assistant vice-president of Vornado, Inc., the parent organization of Two Guys From Harrison. Defendant Joseph Patiro, respondent herein, was an independent trucker who also engaged in the junk business. On June 27, 1973 merchandise, in the form of *15 clothing, was unlawfully taken from a warehouse in the Vornado complex in which Palumbo worked, under the direction of Palumbo, placed on Patiro's truck and removed by Patiro from the warehouse. Evidence from a security guard, who testified from personal observations, indicated that early on that morning Patiro and Palumbo together entered a screened security cage in the warehouse in which the merchandise was kept. Shortly thereafter Palumbo alone returned with another employee whom he directed to pack certain merchandise in cartons. The cartons were placed on Patiro's truck and were discovered in the course of a security check as the truck was leaving the Vornado grounds, covered by a false bill of lading. Palumbo had no authority to sell the goods in question.
Palumbo was indicted for larceny (N.J.S.A. 2A:119-2), conspiracy to commit larceny (N.J.S.A. 2A:98-1 and N.J.S.A. 2A:119-2) and for embezzlement (N.J.S.A. 2A:102-5). Defendant Patiro was indicted for larceny, conspiracy to commit larceny, and for receiving stolen goods (N.J.S.A. 2A:139-1). Thus, both defendants were charged with larceny and with conspiracy to commit larceny. The only difference between the charges made with respect to the two defendants is that Palumbo was charged with embezzlement and Patiro with receiving stolen goods. Following a seven-day joint trial and rendition of the judge's charge concerning all of the offenses referred to in the indictment and their relationship to each other, the jury returned with two questions, only one of which is pertinent to the issues raised on this appeal. That question is reflected in the record as follows:
Can a person be guilty of larceny relative to goods he knows to be embezzled by another?
The judge answered this question in the affirmative and the jury subsequently returned a verdict finding Palumbo guilty of embezzlement and conspiracy to commit larceny, and *16 finding Patiro guilty of larceny and conspiracy to commit larceny. Palumbo was acquitted of larceny and Patiro was acquitted of receiving stolen goods.
Thereafter, on a motion for a new trial interposed by both defendants, the trial judge vacated the verdict finding Palumbo guilty of conspiracy to commit larceny and both verdicts finding Patiro guilty of larceny and conspiracy to commit larceny. It permitted the verdict finding Palumbo guilty of embezzlement to stand. The reason given for this action was the conclusion reached by the trial judge that the answer given to the jury question quoted above was incorrect and that one could not be a larcenist with respect to goods embezzled by another. Moreover, with respect to the vacated verdict as to Patiro's guilt of conspiring to commit larceny, the trial judge took the position that since a conspiracy required the participation of two persons, and since one of the two, Palumbo, could not have been found guilty of larceny and therefore conspiracy to commit larceny, Patiro could not be found guilty of conspiring to commit that offense. The State's application for leave to appeal from the order of the trial court granting a new trial on these grounds was granted.
At the heart of the controversy before this court is the effect to be accorded the conceded distinction between the crimes of larceny and embezzlement where two persons are charged with a theft, only one of whom could be held embezzler. Embezzlement is a crime of statutory creation, intended to "fill some gap in the law of larceny," Perkins on Criminal Law (2 ed. 1969), 289, and was designed to extend the crime of larceny "to a number of acts which were removed from the limits of criminality by a line of subtle and unsubstantial distinctions." State v. Lyon, 45 N.J.L. 272, 275 (Sup. Ct. 1883). This "gap" resulted from judicial determination that the crime of larceny, designed to punish trespassory thefts, did not encompass theft accomplished by a nontrespassory taking, as when the thief's original *17 possession was lawful. In such cases, the subsequent conversion of the property, rightfully possessed, to the thief's own use was not considered larceny. Id. See Commonwealth v. Ryan, 155 Mass. 523, 30 N.E. 364 (Sup. Jud. Ct. 1892). A theft is larceny if the means of acquiring the property is trespass; it is embezzlement if the means of acquisition is by breach of a trust relationship. Schlosser, 1 Criminal Laws of New Jersey 3d, § 42.3 at 480 (1970).
Applying these concepts to the facts of the present case, it is clear that the evidence supports the verdicts returned. Palumbo was an executive officer of Vornado, the owner of the goods, and his possession of them was acquired through lawful means. His cooperation with Patiro in their theft could not therefore be regarded as larceny. Cf. State v. Leicht, 124 N.J. Super. 127, 132-133 (App. Div. 1973). His actions with respect to the theft of the merchandise could only, in contemplation of law, be regarded as an embezzlement. Patiro, of course, stood in no trust relationship with Vornado. He was not its employee or agent. His theft of the merchandise could not therefore be regarded as an embezzlement, but as larceny. The form of the verdict clearly conveys the jury's findings of facts. They concluded that both Palumbo and Patiro cooperated in the theft of the merchandise. It was that finding which required their convicting Palumbo of embezzlement, and Patiro of larceny. It was also this finding that resulted in their convicting both of conspiring to commit larceny. They rejected Palumbo's guilt of larceny because of his trust relationship with Vornado and rejected Patiro's guilt of receiving stolen property because they found him to be the thief.
Defendant's essential contention, accepted by the trial judge, was that one who accepted embezzled property from the embezzler could not be held to be a larcenist with respect to such property but only an aider and abettor of the embezzler or, in the alternative, a receiver of stolen *18 goods. This position, however, improperly assumes a jury finding that Palumbo had first embezzled the goods and then handed over the embezzled goods to Patiro. Nothing in the jury verdict, however, suggests that such was their finding. The verdict returned clearly disclosed that the jury conceived the crime as a substantially simultaneous conversion by Palumbo and theft by Patiro.[1] At any rate there appears no justification to assume factual findings by the jury which would tend to undermine its verdict. The judge properly answered the jury's question by informing them that a person can be guilty of larceny with respect to goods embezzled by another.
With respect to the count charging Patiro with conspiracy to commit larceny, the trial judge accepted defendant's contention that since Palumbo could not commit larceny with respect to the merchandise involved, he could not conspire to commit that offense, and that since the underlying crime was that of embezzlement, with Patiro aider and abettor thereof, Patiro could not alone be found guilty of conspiring to commit larceny.
In essence, defendant is asserting the legal impossibility of Palumbo committing the crime of larceny. From this premise he reasons that Palumbo could not therefore be held guilty of conspiracy to commit larceny. From these two premises he draws the conclusion that Patiro cannot be held guilty of such a conspiracy since there must be two persons to form a conspiracy. One cannot conspire with oneself.
*19 The fallacy in this extended line of reasoning is obvious. Although, under the facts of this case, it may be a legal impossibility for Palumbo to have committed the crime of larceny with respect to the goods in question, it by no means follows that he could not be held guilty of conspiracy to commit larceny of those goods. In State v. Moretti, 52 N.J. 182 (1968), cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), in which defendant's conviction of conspiracy to commit an abortion upon a nonpregnant woman was upheld, the court observed:
Our examination of these authorities convinces us that the application of the defense of impossibility is so fraught with intricacies and artificial distinctions that the defense has little value as an analytical method for reaching substantial justice. Many courts hold that where there is a "legal impossibility" of completing the substantive crime the defendant cannot be guilty of an attempt, but where there is "factual impossibility" the accused may be convicted. We think the effort to compartmentalize factual patterns into these categories of factual or legal impossibility is but an illusory test leading to contradictory, and sometimes absurd, results * * * [at 189]
The position urged upon us by Patiro would, if accepted, yield the absurd result envisioned by the court in Moretti.[2]
Although the second count of the indictment charged Palumbo and Patiro with conspiracy to "commit the crime of larceny," the overt act described in the indictment left no doubt as to the nature of the offense charged:
1. On June 26, 1973, Michael Palumbo, without authorization and contrary to specific instructions, ordered an employee, Manuel Marino, in the presence of Joseph Patiro, to package as defective certain new merchandise to Mr. Joseph Patiro [sic], knowing the packages to contain new and not damaged merchandise and knowing or allowed them to be loaded on to their truck for removal from the premises. *20 The essence of the charge contained in the second count was conspiracy by Palumbo and Patiro to commit a theft of Vornado's merchandise, irrespective of the accurate legal characterization of the nature of the crime. The proofs conformed to the charge. Defendants could not have been misled as to the nature of charge against which they were called upon to defend. State v. Grothmann, 13 N.J. 90, 97 (1953). The essential distinction between embezzlement and larceny as it affects the second count of the indictment, is without relevance to the determination we are here called upon to make. The "intricacies and artificial distinctions" urged upon us by defendant thwart rather than serve substantial justice and are therefore rejected. State v. Moretti, supra.
The trial judge's order vacating the jury verdicts holding Patiro guilty of larceny and conspiracy to commit larceny, and Palumbo guilty of conspiracy to commit larceny, is reversed and those verdicts are hereby reinstated.
NOTES
[1] The jury could have concluded that Palumbo's embezzlement was accomplished when the goods were placed on Patiro's truck and that therefore Patiro's larceny occurred simultaneously with Palumbo's embezzlement. Although it would have been possible for them to conclude an earlier occurrence of the embezzlement (for example, when the goods were placed in cartons), such was not a necessary finding under the proofs, there is no indication the jury so found and, at any rate, criminal responsibility should not be made to rest upon such unsubstantial refinements.
[2] The court here was referring to an attempt to commit an offense rather than a conspiracy to commit it. The position taken, however, has even greater application to a conspiracy charge since the essential basis thereof is the illegal agreement rather than the achieving of its objectives. State v. Moretti, supra at 186.