J-S77002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL RAKEEM SPENCER, | |
| Appellant | No. 334 MDA 2017 |

Appeal from the Judgment of Sentence Entered October 12, 2016
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000882-2015

BEFORE:  BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 22, 2018**

Appellant, Michael Rakeem Spencer, appeals from the judgment of sentence of an aggregate term of 27½ to 55 years' imprisonment, imposed after a jury convicted him of, *inter alia*, criminal attempt to commit homicide and multiple counts of aggravated assault.  We affirm.

The trial court summarized the factual background and procedural history of this case as follows:

> On April 18, 2015[,] at approximately 2:15 a.m., a shooting incident occurred outside of Club Imbibe (hereinafter "Imbibe") on Pine Street in the city of Williamsport.  Appellant … had gotten into a disagreement with Tyree Green inside Imbibe.  Appellant left Imbibe, retrieved a handgun, and returned to the area outside Imbibe.  As it was just after closing, numerous individuals who had been patrons of Imbibe were standing or walking outside. Appellant started firing shots toward Tyree Green.  Five innocent

_____

[*] Former Justice specially assigned to the Superior Court.

bystanders who happened to be standing or walking between Appellant and Tyree Green were shot and sustained various injuries.

On April 23, 2015, the police filed a criminal complaint against Appellant and obtained a warrant for his arrest. The police charged Appellant with two counts of attempted homicide, ten counts of aggravated assault, two firearm counts and related offenses.

On July 29, 2016, following a jury trial, Appellant was found guilty of, among other charges: count 1, criminal attempt to commit homicide,[1] a felony of the first degree; counts 3, 5, and 9, aggravated assault (attempting to cause or causing serious bodily injury),[2] felonies of the first degree; and count 12, aggravated assault (attempting to cause or causing bodily injury with a deadly weapon),[3] a felony of the second degree. Although Appellant was found guilty of numerous other related charges, they are not relevant for the purposes of this [Pa.R.A.P. 1925(a) o]pinion.

[1] 18 Pa.C.S.[] § 903.

[2] 18 Pa.C.S.[] § 2702(a)(1).

[3] 18 Pa.C.S.[] § 2702(a)(4).

On October 12, 2016, the court sentenced Appellant to an aggregate term of twenty seven and a half (27½) years to fifty-five (55) years of incarceration in a state correctional institution, which consisted of six (6) to twelve (12) years on count 1; six and a half (6½) to thirteen (13) years each on counts 3, 5, and 9; and two (2) to four (4) years on count 12. All of these sentences were consecutive to each other. The remaining sentences merged or were concurrent.

Due to a family medical issue, defense counsel requested an extension to file Appellant's post-sentence motion within twenty (20) days of sentencing, which the court permitted. On October 31, 2016, defense counsel filed Appellant's post-sentence motion. The court denied the post-sentence motion in an Opinion and Order dated January 30, 2017.

Trial Court Opinion, 6/19/2017, at 1-2.

Following the denial of his post-sentence motion, Appellant filed a timely notice of appeal. He complied with the trial court's instruction to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court thereafter issued a Rule 1925(a) opinion.

Appellant presents the following issues for our review:

1. The evidence submitted at … Appellant's trial in this matter was insufficient to meet the Commonwealth's burden of proving that … Appellant was the [a]ctor for each offense charged in the information beyond a reasonable doubt.

2. The verdict is against the weight of the evidence because the Commonwealth's evidence did not identify … Appellant as the actor.

3. The trial court erred in permitting the Commonwealth to admit into evidence at trial an audio recording of [Appellant's] discussing with a family member that he would be willing to accept a plea offer in the case for a minimum sentence of fifteen (15) years.

Appellant's Brief at 6.

We have closely examined the certified record, the briefs of the parties, and the pertinent law. In addition, we have reviewed the comprehensive and cogent opinion of the Honorable Marc F. Lovecchio of the Court of Common Pleas of Lycoming County. We determine that Judge Lovecchio's detailed, well-reasoned opinion accurately disposes of the issues raised by Appellant. Accordingly, we adopt his opinion as our own and affirm the judgment of sentence on that basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/22/2018

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH | : | No. CP-41-CR-0000882-2015 |
| | : | |
| vs. | : | CRIMINAL DIVISION |
| | : | |
| | : | |
| MICHAEL SPENCER, | : | |
| Appellant | : | 1925(a) Opinion |

## OPINION IN SUPPORT OF ORDER IN COMPLIANCE WITH RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

This opinion is written in support of this court's judgment of sentence dated October 12, 2016. The relevant facts follow.

On April 18, 2015 at approximately 2:15 a.m., a shooting incident occurred outside of Club Imbibe (hereinafter "Imbibe") on Pine Street in the city of Williamsport. Appellant Michael Spencer (hereinafter "Appellant") had gotten into a disagreement with Tyree Green inside Imbibe. Appellant left Imbibe, retrieved a handgun, and returned to the area outside Imbibe. As it was just after closing, numerous individuals who had been patrons of Imbibe were standing or walking outside. Appellant started firing shots toward Tyree Green. Five innocent bystanders who happened to be standing or walking between Appellant and Tyree Green were shot and sustained various injuries.

On April 23, 2015, the police filed a criminal complaint against Appellant and obtained a warrant for his arrest. The police charged Appellant with two counts of attempted homicide, ten counts of aggravated assault, two firearm counts and related offenses.

1

SCANNED

On July 29, 2016, following a jury trial, Appellant was found guilty of, among other charges: count 1, criminal attempt to commit homicide,[1] a felony of the first degree; counts 3, 5, and 9, aggravated assault (attempting to cause or causing serious bodily injury),[2] felonies of the first degree; and count 12, aggravated assault (attempting to cause or causing bodily injury with a deadly weapon),[3] a felony of the second degree. Although Appellant was found guilty of numerous other related charges, they are not relevant for the purposes of this Opinion.

On October 12, 2016, the court sentenced Appellant to an aggregate term of twenty-seven and a half (27½) years to fifty-five (55) years of incarceration in a state correctional institution, which consisted of six (6) to twelve (12) years on count 1; six and a half (6 ½) to thirteen (13) years each on counts 3, 5 and 9; and two (2) to four (4) years on count 12. All of these sentences were consecutive to each other. The remaining sentences merged or were concurrent.

Due to a family medical issue, defense counsel requested an extension to file Appellant's post-sentence motion within twenty (20) days of sentencing, which the court permitted. On October 31, 2016, defense counsel filed Appellant's post-sentence motion. The court denied the post-sentence motion in an Opinion and Order dated January 30, 2017.

Appellant filed a timely notice of appeal. In his concise statement of errors complained of on appeal, Appellant asserts three issues:

> 1. The evidence submitted at the Appellant's trial in this matter was insufficient to meet the Commonwealth's burden of proving that the Appellant was the actor for each offense charged in the information

---

[1] 18 Pa. C.S.A. §903.
[2] 18 Pa. C.S.A. §2702(a)(1).
[3] 18 Pa. C.S.A. §2702(a)(4).

2

beyond a reasonable doubt.

2. The verdict is against the weight of the evidence because the Commonwealth's evidence did not identify the Appellant as the actor.

3. The trial court erred in permitting the Commonwealth to admit into evidence at trial an audio recording of the [Appellant] discussing with a family member that he would be willing to accept a plea offer in the case for a minimum sentence of fifteen (15) years.

Appellant first asserts that the evidence was insufficient to establish that he was the actor for each offense charged in the Information. The court cannot agree.

When reviewing a challenge to the sufficiency of the evidence, the court must determine whether the evidence introduced at trial and all reasonable inferences derived from that evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to establish beyond a reasonable doubt every element of the offense charged. *Commonwealth v. Hicks*, 156 A.3d 1114, 1123 (Pa. 2017); *Commonwealth v. Burno*, 154 A.3d 764, 791 (Pa. 2017). "The Commonwealth may sustain this burden of proof by wholly circumstantial evidence, and the jury is free to believe all, part, or none of the evidence." *Hicks*, supra.

The Commonwealth presented abundant evidence to establish that Appellant intentionally shot down the alleyway aiming to hit Tyree Green, missed him, and actually hit numerous other individuals who were seriously injured as a result. Multiple witnesses testified that the individual in the white shirt was the shooter and identified Appellant as the individual in the white shirt. Appellant admitted in his trial testimony that he was the individual in the white shirt. Appellant told Adrian Stafford that he was the shooter and also

3

admitted such in a taped interview with the police. Appellant left the white shirt in the vehicle Mr. Stafford was driving. Mr. Stafford turned the white shirt over to the police who had it tested for gunshot residue. Furthermore, Appellant fled to Philadelphia, and instructed his cousin Bahteem Sims to retrieve the firearm and throw it in the river, evidencing his consciousness of guilt.

More specifically, Tyrone Green testified that his twin brother, Tyree, and the person in the white shirt were arguing and trash talking. Tyrone Green saw the person in the white shirt pointing in their direction. He saw sparks and heard five or six shots. He identified Appellant as the black male in the white shirt. N.T., July 26, 2016, at 97-98, 101, 103-104, 110, 114.

Christopher Harrold testified that he witnessed Appellant shooting down the alleyway. Mr. Harrold indicated that he was 100% sure that Appellant was the shooter. N.T., July 27, 2016, at 14, 27.

When asked which of the people was firing the shots, Nathan Dunlap stated, "someone had on a white t-shirt on the left side, the same side I seen the flashes." N.T., July 27, 2016, at 65.

Lieutenant Arnold Duck, of the Williamsport Bureau of Police, testified that he collected six spent .380 caliber shell casings, as well as a bullet and bullet fragments, from the crime scene. N.T., July 27, 2016, at 49-50, 57-58.

Corporal Elwood Spencer of the Pennsylvania State Police testified as the Commonwealth's firearm and tool mark identification expert. Corporal Spencer testified that the spent shell casings and the discharged and mutilated bullets were .380 caliber and

4

discharged from the same unknown firearm. N.T., July 27, 2016, at 93-94, 97, 99.

Bahteem Sims testified that Appellant contacted him by phone and told him the firearm was between some clothes in Appellant's closet in Mr. Sims' grandfather's house.[4] Appellant told Mr. Sims to take the firearm and throw it in the river. Mr. Sims retrieved the firearm. It was a black, semiautomatic, .380 caliber handgun. Instead of throwing it in the river, though, Mr. Sims sold it. N.T., July 27, 2016, at 30-33.

Adrian Stafford testified that Appellant and a guy in a jean jacket got into a confrontation inside Imbibe. Mr. Stafford and Appellant left. Mr. Stafford drove Appellant to his uncle's house. Appellant went inside his uncle's house for about ten seconds, came out and got back into the car. They drove back and parked in a lot near Imbibe. They got out of the vehicle and started walking toward Imbibe. When they reached the concrete barriers, Mr. Stafford was standing next to Appellant. Appellant said "look, look," and Mr. Stafford heard rounds being fired. He and Appellant then returned to their car and pulled out. After they were back inside the vehicle, Appellant admitted to Mr. Stafford that he did the shooting. Mr. Stafford also saw the gun. Later, Mr. Stafford drove Appellant to Philadelphia. Appellant left his white shirt in the rental vehicle Mr. Stafford was driving. Mr. Stafford gave the white shirt to Agent Raymond Kontz of the Williamsport Bureau of Police. N.T., July 26, 2016, at 133-139, 150-151.

Appellant admitted that he was wearing a white t-shirt with a design on it that night. Appellant was living in Williamsport, splitting time staying at his uncle Herb Brown's residence on Pine Street and his uncle Kenny Spencer's residence on Baldwin Street. Mr.

---

[4] Mr. Sims' grandfather is Appellant's uncle, Herb Brown.

5

Stafford dropped him off at the Pine Street residence and shortly thereafter Appellant walked to the residence on Baldwin Street. Around 8 a.m. Stafford picked him up and drove him to Philadelphia. Appellant also admitted that he called Bahteem Sims and asked him to dispose of the firearm, but he claimed that he did so at the direction of Stafford. N.T. July 28, 2016, at 52, 61-62, 80, 82.

Agent Kontz sent the white t-shirt for testing to determine if there was gunshot residue (GSR) on it. N.T., July 27, 2016, at 73-74.

Stephanie Horner testified as the Commonwealth's expert witness on GSR. She used a scanning electron microscope to analyze the t-shirt for GSR. She found GSR on the right side of the t-shirt. N.T., July 27, 2016, at 104, 108, 111.

Appellant's uncle, Kenneth Spencer, testified that Appellant is right-handed. N.T., July 28, 2016, at 102.

Appellant also waived his Miranda rights and agreed to a taped interview with Agent Kontz. Appellant initially denied being the shooter or even being present at Imbibe that night. When the interview resumed after taking a cigarette break, however, Appellant admitted that he was the shooter but claimed Stafford ("Johnny") gave him the gun and told him to fire it at a group of black guys. Appellant claimed that he only did so because he was afraid of Stafford and what Stafford would do to him and his family. During Agent Kontz' testimony on July 28, 2016, the Commonwealth played the tape of the interview. N.T., July 28, 2016, at 24.

Each aggravated assault victim also testified about being shot in the alleyway and the injuries that they suffered as a result of being shot.

6

When viewed in the light most favorable to the Commonwealth as the verdict winner, there was ample evidence to prove beyond a reasonable doubt that Appellant was the shooter or "actor."

Appellant next contends that the jury's verdict was against the weight of the evidence. Initially, the court notes that Appellant has failed to properly preserve this claim for appellate review. A challenge to the weight of the evidence must be raised with the trial judge in a motion for a new trial either orally or in writing before sentencing or in a post-sentence motion. PA. R. CRIM. P. 607(A). The court could not find anything in the record to show Appellant challenged the weight of the evidence before sentencing. Although Appellant filed a post-sentence motion, it did not contain a claim that the verdict was against the weight of the evidence. The failure to present this claim to the trial judge in any manner results in waiver. PA. R. APP. P. 302(a)("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if this claim had been properly preserved, it lacks merit. "The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008).

> A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013)(quoting *Commonwealth*

7

*v. Cruz*, 919 A.2d 179, 282 (Pa. Super. 2007), appeal denied, 928 A.2d 1289 (Pa. 2007)).

The jury's verdict did not shock the court's conscience. The court has already set forth much of the Commonwealth's evidence that established Appellant was the shooter. In addition, Appellant's flight to Philadelphia, his telephone call to Bahteem Sims to dispose of the firearm, and his statements to his uncle that he was willing to plead guilty for a fifteen year minimum sentence showed his consciousness of guilt. Appellant's trial testimony that Stafford was the shooter and his explanations for his prior statements were not credible. It did not shock the court in the least that the jury found Appellant guilty.

Appellant's final contention is that the court erred in permitting the Commonwealth to admit into evidence at trial an audio recording of Appellant discussing with a family member that he would be willing to accept a plea offer in the case for a minimum sentence of fifteen (15) years.

During cross-examination of Appellant, he was questioned concerning a conversation between he and his uncle which occurred while Appellant was incarcerated in the Lycoming County Prison. He was asked whether he discussed with his uncle his willingness to enter a plea for a minimum of fifteen (15) years.

At the time, Appellant objected on the basis that the discussions were part of "plea negotiations." N.T., July 28, 2016, at 94. The court overruled the objection noting that Defendant's statement evidenced consciousness of guilt.

In his post-sentence motion, Appellant asserted different objections. Specifically, Appellant argued that he was in jail without bail and was "forced to discuss" the plea with family members. Appellant argued that the admission of these statements would

8

have a "chilling effect" on "required conversations." Furthermore, Appellant argued that the statement was not consciousness of guilt because many defendants discuss plea offers with family members. Finally, Appellant argued that the testimony was far too prejudicial.

To the extent Appellant asserted any objections in his post-sentence motion that were not preserved at trial, they are waived. PA. R. EVID. 103(a)(1); *Commonwealth v. Poplawski*, 130 A.3d 697, 729 (Pa. 2015)(a failure to make a contemporaneous and specific objection results in waiver of the objection). However, despite said waiver, the court will address Appellant's arguments.

Regardless of whether Appellant was incarcerated is not relevant to whether his statement is consciousness of guilt. Furthermore, despite his assertions to the contrary, Appellant was not compelled to discuss the plea with family members over a telephone system that he knew was recording his conversations. He could have discussed any plea offer or his willingness to accept a plea through written correspondence or privately with counsel and family members during court proceedings.

A defendant's statements to someone other than the prosecutor and his counsel referencing a willingness to enter into a plea are not plea negotiations and constitute admissible confessions of guilt. *Commonwealth v. Van Divner*, 962 A.2d 1170, 1180-81 (Pa. 2009)(defendant made the following statements to a police officer which were not plea negotiations but were relevant admissions of guilt: "This is a death penalty case and I don't want the needle, life for life. Tell the [District Attorney] I will plead guilty for life. I would have killed myself if I knew Michelle was dead").

Appellant's conversations with his family members were clearly not part of

9

any plea negotiations. Appellant's statements were not made in the course of a guilty plea that was later withdraw, a *nolo contendere* plea, or any other proceeding under the enumerated Rules of Pennsylvania Criminal Procedure or their equivalent in another jurisdiction, and the prosecuting attorney was not a party to any of these conversations. See PA. R. EVID. 410(a). In fact, there is no evidence that the Commonwealth was interested in plea negotiations, let alone participated in plea negotiations. Therefore, Appellant's attempt to cloak his voluntary admissions in the mantle of plea bargaining is baseless. Furthermore, Appellant's statements that he would enter a plea had significant probative value in light of the fact that he previously denied having any culpability.

DATE: 6-19-17

By The Court,

Marc F. Lovecchio, Judge

cc:    Martin Wade, Esquire (ADA)
      Greta Davis, Esquire
      Work file
      Gary Weber, Esquire (Lycoming Reporter)
      Superior Court (original & 1)

10